## Rowell's Estate.

Argued April 16, 1934. Before FRAZER, C. J., SIMP-SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

182

*William M. Boenning,* Special Deputy Attorney General, with him *E. Russell Shockley,* Deputy Attorney General, and *Wm. A. Schnader,* Attorney General, for appellant.

*John Harper,* for appellees.

Opinion by Mr. Justice Simpson, May 21, 1934:

Testator died May 2, 1931. By his will he gave to his wife certain realty and personalty absolutely and also an annuity of $1,000 per month, to his sister an annuity of $75 per month, and all the rest and residue of his estate to certain collateral devisees and legatees. He directed "that all devises and bequests shall be paid and made without deduction for any inheritance taxes, and that all inheritance taxes shall be paid out of my residuary estate." The executors elected to pay all the inheritance taxes due by the estate at once, including those chargeable upon the annuities as well as those upon the rest and residue of the estate. To this end they communicated with the register of wills, who made a partial assessment, the amount of the inheritance tax shown thereby being paid at once; and on April 29, 1932, an appraiser duly appointed appraised the assets of the entire estate for inheritance tax purposes. This appraisement showed that the balance of the inheritance tax, including therein the life estates and the remainders, ag-

gregated $17,517.38, and this was paid by the executors on the same day. The detailed statement thereof is as follows:

| | | |
|---|---|---|
| Net estate | $476,239.38 | |
| 2% tax—personal effects to Mrs. Rowell | 4,416.00 | 88.32 |
| Bequest of Laanna residence to Mrs. Rowell | 16,640.00 | 332.80 |
| Life interest of Mrs. Rowell, born December 5, 1860, in annuity of $12,000 | 72,276.00 | 1,445.52 |
| 10% " — Life estate of Miss Rowell, born March 16, 1851, in annuity of $900 | 3,163.50 | 316.35 |
| Balance of estate | 379,743.88 | 37,974.39 |
| Totals | $476,239.38 | $40,157.38 |
| Less payment on account 8/4/31 | | $22,640.00 |
| | | $17,517.38 |

If this is a final appraisement, as it appears to have been intended to be, it ends the present controversy, for a second appraisement is without authority in law: Moneypenny's Est., 181 Pa. 309. Inasmuch, however, as it was reached as the result of negotiations between the executors and the register, the parties seem to think that no such conclusive effect should be given to it, and we will treat it in that way.

The only item in the account, which is the subject of objection, is that of $72,276, which, it is agreed, is the actual value of the widow's annuity, when appraised as all annuities are, and indeed must be, according to the mortality and annuity tables unless their years of duration is specified in the will. The Commonwealth's only objection to it arises because of the fact that the widow did not live out her life expectancy, but died October 4, 1931, five months and one day after her husband and before the tax on the annuity had in fact been paid. Be-

cause of her death at that time, the register then made another appraisement, the value of her life estate being fixed therein at $5,066.67, which was exactly the amount she had received or was entitled to receive from testator's estate to the time of her death. From this appraisement the executors appealed to the orphans' court. In his answer therein the only reason given by the register for his change of front, was that the "presumption of her expectancy of life was overcome by the fact of the [actual] duration of her life."

Superficially, that contention of the Commonwealth would appear to be quite persuasive, but it is only superficially so. In Ithaca Trust Co. v. United States, 279 U. S. 151, 154, where a somewhat similar question arose, it is said: "By section 403 (a) (3) the net estate taxed is ascertained by deducting, among other things, gifts to charity such as were made in this case. But as those gifts were subject to the life estate of the widow, of course their value was diminished by the postponement that would last while the widow lived. The question is whether the amount of the diminution, that is, the length of the postponement, is to be determined by the event as it turned out, of the widow's death within six months, or by mortality tables showing the probabilities as they stood on the day when the testator died. The first impression is that it is absurd to resort to statistical probabilities when you know the fact. But this is due to inaccurate thinking. The estate so far as may be is settled as of the date of the testator's death. See Hooper v. Bradford, 178 Mass. 95, 97. The tax is on the act of the testator not on the receipt of the property by the legatees. Young Men's Christian Association v. Davis, 264 U. S. 47, 50; Knowlton v. Moore, 178 U. S. 41, 49, and, passim, New York Trust Co. v. Eisner, 256 U. S. 345, 348, 349; Edwards v. Slocum, 264 U. S. 61. Therefore, the value of the thing to be taxed must be estimated as of the time when the act is done. But the value of property at a given time depends upon the rela-

tive intensity of the social desire for it at that time, expressed in the money that it would bring in the market. See International Harvester Co. v. Kentucky, 234 U. S. 216, 222. Like all values, as the word is used by the law, it depends largely on more or less certain prophecies of the future; and the value is no less real at that time if later the prophecy turns out false than when it comes out true. See Lewellyn v. Electric Reduction Co., 275 U. S. 243, 247; New York v. Sage, 239 U. S. 57, 61. Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done, but that the value of the wife's life interest must be estimated by the mortality tables."

By section 3 of our Inheritance Tax Act of June 20, 1919, P. L. 521, 522, the statute in force throughout these proceedings, it is provided that "Where there is a transfer of property by a devise, descent, bequest, gift or grant, liable to the [inheritance] tax hereinbefore imposed, which devise, descent, bequest, gift, or grant is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the persons liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner, but the owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life estate or estates for years."

Evidently the words in the first part of the last sentence—"on the value of the estate at the time of the payment of the tax"— refers to the estate in remainder, for if they related to the life-estate, we would have the absurd condition that "the tax shall be assessed on the

value of the [life] estate at the time of the payment of the tax, after deducting the value of the life estate or estate for years." Our question, under the last sentence, then is as of what date is "the value of the life estate or estate for years" to be appraised?

By section 13 of the Act of April 10, 1849, P. L. 570, 572, it is provided "That where any person or persons shall bequeath or devise any estate, real or personal, to a father, widow, or other person during life, and the remainder over to collateral heirs at their decease, *immediately after the death of the testator* the estate so granted shall be appraised in the manner hereinbefore provided [i. e., according to section 12 of the act] and after deducting the valuation of said life estate, the collateral inheritance tax on the remainder shall be immediately due and payable over to the register of wills of the proper county." This provision of the statute has not been repealed (though the time for payment of the tax has been changed), and this being so it answers the pending question, viz., the value of the life estate is to be appraised "immediately after the death of testator." Necessarily, in view of this requirement, if the appraisement is not actually made until later, it must be made as of that date. This being so, the decree appealed from is correct.

If, however, we exclude that section of the Act of 1849 from consideration the same result is reached. In this event there would be no direct statutory provision on the subject, and the fact that the lien attaches as of the date of testator's death, would be determinative. So, too, the same answer is necessitated by the requirement of uniformity specified in article IX, section 1 of the Constitution of the State, viz., "All taxes shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax." Under this provision the power to classify is unlimited, but within each class actually established the taxes provided

for must be uniform. So, too, if the statute providing for the classification is capable of two interpretations, one of which would provide for uniform taxes and the other not, the former interpretation is to be preferred.

In gifts by will, there must, in every case of a life estate with remainder over, be an appraisement, by the use of the mortality and annuity tables,—if the will itself is silent on the subject,—of the value of the life-estate as of the date of the death of the testator. This is admitted by the Commonwealth, except in the single instance where the life-tenant dies before actual payment of the tax on his estate. But, since the tax is due from the date of death of the testator, regardless of whether an appraisement has been made, it follows that, in this estate, if payment had been made the day before the death of the widow, the value of the life estate would have been $72,276; if the day after, it would, according to the Commonwealth's contention, have been but $5,006.67; that is the uncertain factor of the actual duration of one human life has reduced the valuation of the life estate by $67,269.33. This is not uniformity, as would, perhaps, more clearly appear if there were two estates in all other respects exactly alike, but in one the life-tenant died, as did the widow here, and in the other she survived until after actual payment. Indeed, the lack of uniformity would appear pro tanto on a comparison of any two appraisements in one of which the life tenant had died during his life expectancy. The only possible way of attaining the uniformity which the Constitution requires,—due respect to which requirement must be observed in every case of taxation (Banger's Appeal, 109 Pa. 79),—is to make the appraisement of the life-estate as of the date of death of the testator, unaffected by actual or possible questions of future survivorship. Of course, the legislature might have provided for the contingency which arose in this case, for that would be but the making of a new class,

which the constitution expressly authorizes, but no such provision has been made.

The decree of the court below is affirmed and the appeal is dismissed.