## Morgan's Estate. No. 1

*High, Dettra & Swartz,* and *Morgan, Lewis & Bockius,* for appellants.

*Paul P. Wisler,* for Commonwealth.

SHEELY, P. J., fifty-first judicial district, specially presiding, March 7, 1941.—This is an appeal from the appraisement for inheritance tax purposes in the estate of John B. Morgan, deceased, being specifically an appeal from the assessment of penalties. The parties have stipulated the facts, and there are no disputed facts to be determined.

John B. Morgan, late of Montgomery County, died on June 16, 1919, leaving a will wherein he devised and bequeathed his residuary estate to Germantown Trust Company, F. Corlies Morgan, S. Rowland Morgan, and Sarah F. Morgan in trust for the purpose of paying out the net income of said trust during the lifetime of his wife, as therein provided, and upon the death of his wife to pay one third of the trust estate to each of his said sons, F. Corlies Morgan and S. Rowland Morgan, absolutely, and to hold one sixth of said residuary estate in trust for each of his sons and to pay over to each of them during their lives the net income arising therefrom. It was provided that at the death of each son his respective share of the principal should be paid as directed by the last will of such son.

Sarah F. Morgan, the original life tenant, died on February 13, 1938. On June 18, 1938, the surviving trustees filed a reappraisement of the property with the register of wills for the purpose of inheritance tax assessment, valuing the estate at $537,780.69. On March 2, 1939, the Commonwealth, by its inheritance tax appraiser, filed an appraisement valuing the estate at $615,236.69. The register of wills assessed tax thereon in the amount of $13,044.74, together with a penalty of one percent per month from August 13, 1938. On March 11, 1939, the

trustees paid $8,356.50 in tax, based upon their own reappraisement. On March 14, 1939, the total assessment was reduced by the Commonwealth to $12,044.74, of which $9,597.53 represented the amount presently due and payable upon the respective remainder interests and the life estates. On November 13, 1939, the trustees paid the balance of the tax then due of $1,241.03.

The penalties assessed by the Commonwealth have never been paid, and the liability of the remaindermen therefor is the sole question raised on this appeal.

Appellants contend: (1) That no interest or penalty should run upon the tax because of the failure of the Commonwealth to file its appraisement until 13 months after the death of the life tenant; (2) that if interest does run on the unpaid tax, it should not begin until one year after the death of the life tenant; (3) if interest does run on the unpaid tax, it should be assessed at the rate of six percent and not 12 percent per annum.

Under section 3 of the Act of June 20, 1919, P. L. 521, as amended, 72 PS §2304, "the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner, but the owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax. . . ."

Under this section, the date on which the tax is payable, and from which interest begins to run, is the date on which the person liable for the tax comes into "actual possession" of the estate by the termination of the life estate. Tax, however, is assessed on the value of the estate "at the time the right of possession accrues to the owner." The legislature must have intended different times by the use of these terms. The "right of possession"

accrues immediately upon the death of the life tenant or the termination of the estate for years, and this date fixes the time as of which the estate is valued. However, the person entitled to such estate may not actually receive it on that date. His "actual possession" is frequently delayed by accounting or litigation. To provide for this delayed possession the statute provides that the tax shall not be payable nor shall interest begin to run thereon until he comes into "actual possession" of such estate.

In the present case, the remaindermen were also trustees, together with Germantown Trust Company. They have filed no account and contemplate filing none until the termination of all the life estates. The result is that they came into "actual possession" of the remainders immediately upon the death of the life tenant on February 13, 1938, and, under the statute, that is the date on which the tax was payable and from which interest must be calculated: Parker's Estate, 51 York Leg. Rec. 150 (1937).

There is no merit in the contention that interest should not begin to run until one year after the death of the life tenant. The statute definitely fixes the time as the date when the remainderman comes into actual possession of the estate. Under the provisions of section 38 of the Act of June 20, 1919, P. L. 521, 72 PS §2442, interest on inheritance tax begins to run from one year after the death of decedent, meaning the decedent whose estate is taxable. The "transfer", which is the subject of the tax under section 1, actually takes place on that date: Rowell's Estate, 315 Pa. 181 (1934). Therefore, were it not for the provision of section 3 of the act, applying to future estates, all taxes would be payable immediately upon the death of decedent. By section 3 the beneficiary is permitted to defer payment of the tax until he comes into possession, but this right is not absolute. He can take advantage of the delayed payment only by complying with the statute and making a return of the estate to the register of wills within one year from the death of decedent and entering

into security for the payment of the tax. Otherwise, the tax is payable immediately: Mayer's Estate, 330 Pa. 39 (1938). If the beneficiary of the future estate takes advantage of the provisions of section 3 of the act permitting him to defer payment of the tax, he is bound by the provisions of that section requiring payment when he comes into actual possession of the estate.

The remaining question is the rate of interest to be charged. Under section 38 of the Act of 1919, 72 PS §2442, interest is fixed at the rate of 12 percent on the tax beginning one year from the date of the death of decedent. The section also provides:

"Where, because of claims made upon the estate, litigation, or other unavoidable cause of delay, the estate of any decedent or any part thereof cannot be settled up at the end of the year, interest at the rate of six percentum per annum shall be charged upon the tax arising from the unsettled part thereof, from the end of the year until there be default."

The tax is, of course, due from the date of the death of testator regardless of whether an appraisement is made: Rowell's Estate, supra; and, where payment is deferred under the provisions of section 3 of the act, the tax is due from the date the remainderman comes into actual possession. The 12 percent interest rate provided in section 38, however, is obviously in the nature of a penalty for a delay in payment.

In the present case, the life tenant died on February 13, 1938, and on June 18, 1938, the trustees filed with the register of wills a reappraisement on the property for the purpose of assessment of the inheritance tax thereon. The inheritance tax appraiser, however, delayed filing his appraisement until March 2, 1939. Immediately thereafter, on March 11, 1939, the trustees paid the tax due on the basis of their own appraisement, and on March 14, 1939, the register of wills corrected the assessment showing a reduced tax. The Commonwealth was clearly negligent

in delaying the filing of its appraisement for a period of more than a year after the death of the life tenant. Under such circumstances it should not be permitted to collect a penalty from the taxpayer: Parker's Estate, supra; Pratt's Estate, 28 Del. Co. 456 (1939). The taxpayers acted with reasonable promptness in filing their reappraisement and, while they might have paid the tax immediately on the basis of that appraisement, they had no means of ascertaining whether that payment would be correct. Until the Commonwealth definitely fixed the amount of tax due, that part of the estate relating to the tax could not be finally settled, and, so far as the taxpayer was concerned, that was an "unavoidable cause of delay". Under section 38 of the act, therefore, the interest to be charged on the unpaid tax should be at the rate of six percent per annum (it not being shown that the estate had not been productive to that extent) until such time as there would be a default in payment.

The final assessment of the tax was made on March 13, 1939. The final payment of the tax was not made until November 13, 1939. During this period the delay in payment was not due to any default on the part of the Commonwealth and, after final assessment, the remaindermen were in default. During that period, therefore, interest should be assessed at the rate of 12 percent per annum.

We conclude that interest at the rate of six percent per annum on the total tax due of $9,597.53 should be assessed from the date of the death of the life tenant on February 13, 1938, until March 11, 1939, when $8,356.50 was paid on account of the tax; and that interest at the rate of 12 percent per annum on the balance of tax presently due of $1,241.03 should be assessed from March 11, 1939, until November 13, 1939, the date of payment thereof. . . .