# Fidelity-Philadelphia Trust Co. et al. v. Board of Finance and Revenue

*Hull, Leiby & Metzger*, for plaintiffs.

*T. McKeen Chidsey*, Attorney General, and *David Fuss*, Deputy Attorney General, for defendant.

RICHARDS, P. J., January 5, 1948.—This is an action in mandamus in which plaintiffs seek to compel defendant to refund transfer inheritance tax in the amount of

$7,239.90. Preliminary objections were filed by defendant and argument had thereon.

## Facts

Reginald T. Ferguson died testate in Philadelphia, on March 13, 1924. His will gave two properties to his trustees and directed that the net income therefrom, or from the proceeds of the sale of said properties, should be paid to his wife, Katherine E. Ferguson, for life. There was a proviso that the weekly payments to her should not be less than $100, and that any deficiency of income should be paid by the trustees from corpus. Upon the death of life tenant, any corpus in the trust was to go to collaterals who were also given the residue of the estate. William E. Ferguson was named executor and he and the Philadelphia Trust Company were named trustees. Apparently, the Fidelity-Philadelphia Trust Company succeeded to the rights of the Philadelphia Trust Company, although we have found nothing in the record to explain this. For some reason, the wife, Katherine E. Ferguson, appended a statement to the will certifying that she had read the will and agreed to all it contained. At any rate, she elected to take under the will. A codicil made gifts of $5,000 each to three persons. The will was dated November 21, 1923, and the codicil February 11, 1924.

The appraisement for transfer inheritance tax purposes was made on March 12, 1925, showing the total net value of real and personal property to be $159,-807.35. The annuity to the widow was appraised at $54,308.60, and the remainder interest at $105,498.79. Tax at the rate of two percent was paid on the annuity in the amount of $1,086.17, and on the remainder interest at 10 percent in the amount of $10,549.87. No appeal was taken from the appraisement or tax assessment.

The executor filed his account which came up for audit before the Orphans' Court of Philadelphia County on June 4, 1925, at which time it was continued. It

was approved nisi on March 21, 1928, and finally thereafter, as no exceptions were filed. In this adjudication, the court directed the payment of the three $5,000 bequests and awarded the entire balance to the trustees to secure the widow's annuity. The court stated that the income was not sufficient to pay the annuity, that no interpretation was made of the will other than the distribution ordered, that vouchers submitted evidenced the payment of the tax in the amounts mentioned above, and that no objections had been filed. This adjudication reveals that the executor paid the tax and was allowed credit therefor.

On November 4, 1946, the fourth account of the Fidelity-Philadelphia Trust Company, surviving trustee, was before the same court for audit. At this time there was a balance in the hands of the trustee of $18,500, and the deficit on the widow's annuity amounted to $27,729.49. The court awarded the entire balance to the widow and terminated the trust, there again being no objections. William E. Ferguson, cotrustee, died on November 29, 1943. The nisi order approving the account was dated November 8, 1946.

Present plaintiffs petitioned defendant for a refund of transfer inheritance tax in the amount of $7,239.90, on January 28, 1947. This figure was reached as follows: From the entire remainder of $105,498.75 deduct $15,000 for the three bequests of $5,000 each, leaving a balance of $90,498.75; tax paid on this item at 10 percent amounted to $9,049.87; tax admitted to be due thereon at two percent, $1,809.97; difference, or amount sought to be recovered, $7,239.90. The request was refused on March 13, 1947, for lack of jurisdiction due to the alleged failure of petitioners to comply with the law relating to refunds. A rehearing was refused the following day and the parties notified.

The complaint in the present case was filed on June 24, 1947, and the preliminary objections, by agreement, on August 1, 1947. The objections, generally, raise the issue that plaintiffs are not entitled to relief for

the reason that they have not complied with the legislative requirements relating to refunds. The more detailed aspects thereof will be dealt with hereafter.

## Discussion

The parties hereto agree that the applicable law relating to the present requested refund is found in The Fiscal Code of April 9, 1929, P. L. 343, as amended, 72 PS §503(a)(2). The relevant part of this section reads as follows:

"The Board of Finance and Revenue shall have the power, and its duty shall be,

"(a) To hear and determine any petition for the refund of taxes . . . All such petitions must be filed with the board within two years of the payment of which refund is requested, or within two years of the settlement in the case of taxes or bonus, whichever period last expires, except . . .

"(2) When the estate upon which any transfer inheritance tax has been paid shall have consisted in whole or in part of a partnership, or other interest of uncertain value, or shall have been involved in litigation, by reason whereof there shall have been an overvaluation of that portion of the estate on which the tax has been assessed and paid, which overvaluation could not have been ascertained within said period of two years. In such case, the application for repayment shall be made to the Board of Finance and Revenue, within one year from the termination of such litigation, or ascertainment of such overvaluation."

The parties to this action are in accord that no request for a refund was made within two years of the date the tax was paid. Plaintiffs contend, however, that the remainder interest was of uncertain value, and involved in litigation, and that the request for refund was made within one year of the date when the uncertainty of value was resolved and within one year of the termination of litigation. Defendant, on the contrary, takes the position that the tax assess-

ment was final because unappealed from; that the two adjudications of the Orphans' Court of Philadelphia, one relating to the executor's account and one to the fourth account of the surviving trustee, were not litigation within the meaning of the act; and that if there was any ascertainment of overvaluation, it occurred more than one year prior to the filing of the petition for a refund.

The value of an annuity must be appraised immediately after the death of testator: Rowell's Estate, 315 Pa. 181, at pages 186, 187. In the case of remainder interests, "the tax . . . shall not be payable . . . until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner, but the owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life estate or estates for years;" Transfer Inheritance Tax Act of June 20, 1919, P. L. 521, 72 PS §2304.

When no appeal is taken from an appraisement of property for transfer inheritance tax purposes and it is absolutely confirmed, it is conclusive on all parties, in the absence of fraud, accident or mistake: Ernst's Estate, 317 Pa. 367; Heberton Estate, 351 Pa. 564. In the latter case the Supreme Court said (p. 567):

". . . it makes no difference whether the mistake of judgment applies *to the taxability of an asset* . . . or a mistaken conclusion that the remainder will be subject to the collateral tax instead of the direct. In either case, the assessment is final and conclusive on both the taxpayer and the Commonwealth and cannot be challenged except by an appeal." (Italics supplied.)

Were we to accede to plaintiffs' contention it would be equivalent to a determination that the life

estate was appraised at less than its full value and that the tax assessed on the life estate was erroneously computed. This is made clear by the complaint. Paragraph 10 shows payment of tax at the rate of two percent on the life estate valued at $54,308.60. There is no objection to this valuation or tax computation. But paragraph 18 contends that tax at two percent should have been paid on $90,498.75, that sum being all of the remainder interest except the three $5,000 bequests. The result of these two averments is that the life estate should have been appraised at $144,817.35, the total of $54,308.60 and $90,498.75. Furthermore, the tax computation on the life estate would be in error to the extent that it failed to include a two percent tax on the $90,498.75. Such a determination would be in direct conflict with the law as stated above. The appeal period has passed. The appraisement and assessment of the tax are conclusive on all parties. This court in no event would have jurisdiction over an appeal from the appraisement and assessment. The fact that plaintiffs concede that additional tax is due on the life estate is not an issue. It is a mere result of the position they have taken.

As far as the remainder interest is concerned, there was no obligation to pay the tax before the right of possession accrued. But having elected to pay it, it is now too late to say that the appraisement of the remainder interest and the assessment of the tax thereon were wrong. Resort was not had to the proper legal remedy. The will conferred upon the executor no duty or right to pay the tax. Yet, when the executor's account was before the court and credit was taken for the payment of the tax on the remainder interest, neither the life tenant, who had a right to complain, or the trustees, or the remaindermen, made the slightest objection. Had objection been made and a surcharge imposed upon the executor, the interests of the life tenant and trustees would have been protected. As we view the matter, plaintiffs failed to resort to the proper

legal remedy and are now trying to do indirectly what they cannot do directly. By their own conduct they are estopped from raising the correctness of the appraisement and assessment in a purely collateral proceeding.

Darsie Estate, 354 Pa. 540, confirms this conclusion. There a similar issue was raised by exceptions to an executor's account. It was not only held that an unappealed appraisement and assessment were final, that no supplemental appraisement could be made, but it was suggested that the assessment of tax on the remainder interest might very well have been deferred until the end of the life estate; see page 542. In Haid Estate, 347 Pa. 159, in an opinion written by Mr. Justice Allen M. Stearne, it was held that exceptions to an account may not be considered at an audit as a substitute for an appeal as a means of questioning an appraisement and assessment of the tax.

Neither are we impressed with the contention that either the life estate or remainder interest was of uncertain value. The appraisement fixed the value and it was not questioned by any one. In fact, it was accepted and the tax paid thereon. No appeal was taken and it became final. The vice of plaintiffs' contention is that they determine "uncertainty", not by facts as they existed at the time of death or when the appraisement was made, or at the time the tax was paid, but by developments as they unfolded over the years. The value of an estate such as here involved is not dependent upon the uncertain duration of a life estate, or upon possible future variations of value, whether of appreciation or depreciation. Skill in investment, the exercise of managerial discretion, fluctuating markets and economic developments may result in an increase or decrease in the value of an estate. But such factors are not the test of "uncertain value". In the present case, there was gross personalty at the time of death in 1924, of $156,258.37. Debts and deductions were allowed in the amount of $44,651.02. The real estate

was valued at $48,200.00. The net appraised value of the estate was $159,807.35. Yet by the date of the nisi order approving the executor's account, namely March 24, 1928, the estate had shrunk to $55,956.51, a difference of over $104,000. This decrease occurring in four years is unexplained in the record. Probably it was due to losses, although part of the diminishment was due to annuity payments. In Rowell's Estate, 315 Pa. 181, there is a discussion of the taxation of annuities. This case holds that they must be appraised as of the date of death and that the value is not affected by the life span of the annuitant. We are convinced that the present case reveals no uncertainty of value within the meaning of The Fiscal Code of 1929, P. L. 343, as amended.

In passing, it may be noted, that acceptance of plaintiffs' contention that the remainder was of uncertain value would necessarily lead to the conclusion that such uncertainty was made obvious by the adjudication of 1928. Since at that time it was clear that there remained in the estate but $43,000 which was primarily set aside to meet the annuity requirements, plaintiffs, being put on notice of the uncertain value of the remainder, and having made no request for a refund of tax paid on the remainder interest within one year of such determination, are now barred from recovery by the clear wording of the act. This would, it seems to us, be undoubtedly true as to all of the remainder interest, except the $43,000. As mentioned by us above, plaintiffs base their claim on the fact that tax was paid on $90,498.75 at 10 percent, whereas, they say it should have been at two percent. Accepting their figure, and deducting the $43,000, would leave $47,-498.75 which the court, according to their contention, found to be nonexistent and hence not part of any fund which could pass to those who were to receive the remainder upon the death of the life tenant. Not having requested a refund of the tax paid on this $47,498.75,

within one year of the determination, their claim based on this amount is barred, and at best they could recover only on the remaining $43,000.

The remaining contention of plaintiffs is that the estate was involved in litigation until the court finally determined, in 1946, that the balance of the assets in the hands of the trustee should be paid, delivered and conveyed to the annuitant. Despite the able and fair argument of counsel, we cannot agree with this conclusion. There was certainly no litigation relating to the appraised value of the annuity or remainder interest. There was no necessity to institute or defend any action relating to the assets or liabilities of decedent or his estate. The audits of the two accounts here involved precipitated no contest. No objections were filed to either adjudication. They merely reflected unfolding events. Apparently not even the life tenant received the annuity which decedent intended. The auditing judges, whose action of course is not subject to any review by us, merely applied the terms of the will to a constantly diminishing estate until nothing remained for either the life annuitant or the remaindermen. But at no time in the history of the case was there any conflict between interested parties, or any objections to the appraisement, assessment of the tax or any action of the court. As mentioned above, experience demonstrated that the intended beneficiaries of decedent's will were doomed to disappointment in whole or in part. But we are unable to see how, at any stage of the proceedings, from the death of decedent until the final adjudication, a period of some 24 years, the estate was involved in litigation, within the meaning of the Act of 1929, supra. The outcome at best, it seems to us, was due to fluctuating values and the hazards of investment, and not to an uncertainty of value or litigation as required by the refunding provisions of the law. We are obliged, therefore, to conclude that the present proceeding for refund was not

brought within the period required by law and that the preliminary objections of defendant must be sustained.

### Order

And now, to wit, January 5, 1948, the preliminary objections to the complaint are sustained and the action dismissed, at the cost of plaintiffs.