Kelley Estate

Before Klein, P. J., Bolger, Hunter, Lefever, Saylor and Shoyer, JJ.

*Irvin Stander*, Deputy Attorney General, for exceptant.

*Lewis H. Van Dusen, Jr.*, of *Drinker, Biddle & Reath*, contra.

SHOYER, J., December 23, 1955.—This is an appeal from the assessment of transfer inheritance tax upon collateral remainder interests under the Act of June 20, 1919, P. L. 521, art. I, sec. 3, 72 PS §2304. The hearing judge sustained the appeal. The Commonwealth's exceptions raise the issue of whether the prepayment privilege granted a remainderman by section 3 of that Act may be extended by the court beyond the death of the life tenant, so that the remainderman may benefit from a deduction of the tax duly assessed on the life tenant's share in accordance with the mortality tables.

Mary W. Kelley died in Oxford, England, on January 2, 1953. On January 20, 1953, her Will and Codicil creating a life estate for her husband, with power of consumption, were admitted to probate by the Register of Wills of Philadelphia County. Testatrix also provided for certain specific and pecuniary bequests with the remainder going to collateral relatives. On July 25, 1953, the life tenant died suddenly without having drawn any principal from the trust. On July 22, 1954, decedent's executors filed their Report and Appraisement with the Register of Wills and paid $4,500 on account prior to appraisement. On September 30, 1954, the Commonwealth's appraiser filed an inheritance tax appraisement in which the "clear value" of decedent's estate was appraised at $72,915.09 from which were deducted pecuniary bequests aggregating $2,470 (taxed at 15% in the sum of $370.50) leaving a residuary estate of $70,445.09. The life estate of decedent's

husband was valued at $18,474.20 based on mortality tables adopted by the Department of Revenue. Tax was assessed on said life estate at 2% in the sum of $369.48. Against the tax thus assessed (aggregating $739.98), there was applied the above payment of $4,500 with notation, "OVERPAYMENT TO BE APPLIED TO ANY TAX THAT MAY BECOME DUE". On December 7, 1954, a second appraisement was filed in which the assets of the decedent's estate were appraised as of July 25, 1953 (date of the life tenant's death), at $66,800.00 and tax assessed thereon in the sum of $10,020.09, being at the rate of 15%, and the available portion of the prior $4,500 payment was applied on account thereof leaving a balance of tax alleged to be due in the sum of $6,450.07 with interest. Appeals were taken by the executors from both the aforesaid appraisements.

The section of the Transfer Inheritance Tax Act pertaining to remainders is section 3, which substantially reenacts section 3 of the Act of May 6, 1887, P. L. 79, and reads as follows:

". . . the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. *The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner*, but the owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life-estate or estates for years. . . ." (*Emphasis* supplied.)

The language of this section seems so clear as to require no interpretation, indeed, to admit of no argument. Questions arising under this and other sections of the statute have been decided by our appellate

courts so that little doubt can remain as to the exact meaning of the language involved. Thus it has been held that the tax on a life estate is to be assessed as of the date of death of the testator measured by the probable duration of the life of the life tenant as determined by the mortality tables: Rowell's Estate, 315 Pa. 181; and this notwithstanding the life tenant has died prior to the actual appraisement of the remainder: ibid., page 182. Tax on the remainder is neither due nor collectible until the right to possession accrues, i.e. at the death of the life tenant: Reynolds Estate, 359 Pa. 616; Jewell's Estate, 235 Pa. 119; Simpson's Estate, 332 Pa. 115; Coxe's Estate, 193 Pa. 100, unless the tax on the entire estate is paid by the owner (remainderman) before coming into possession: Heberton Estate, 351 Pa. 564, 568. Such payment, however, on the part of the remainderman is entirely voluntary and the Commonwealth cannot demand the tax or any portion thereof prior to the life tenant's death: Myrtetus' Estate, 69 Pa. Superior Ct. 318, 321.

The learned hearing judge recognized the problem of whether or not the statute should be literally construed but followed the view expressed by the hearing judge in Rowell's Estate, 20 D. & C. 42, 43, 44. There Judge (later President Judge) Van Dusen noted a time pattern evident in the statutes of the Commonwealth pertaining to the administration and distribution of decedent's estates, the assessing of inheritance tax, interest and penalties thereon, the time allowed for the widow's election, etc., etc., from which he observed that the remainderman has a year or longer "in which to decide whether he will pay 'immediately' or wait until he comes into possession." It so happened in that case that the executors elected to pay tax on the whole estate at the time of decedent's death and so notified the Register. Furthermore, the life estate was actually appraised, and the tax paid on that

tenancy and also on account of the remainder prior to the death of the life tenant. It was on this ground that the Supreme Court affirmed. Rowell's Estate "did not deal with the question of when the assessment should have been made on the remainder interest": Simpson's Estate, supra, at page 119.

The learned hearing judge here, following the construction of President Judge Van Dusen, believed that the executors should be allowed a "reasonable" period in which to make their election and because of the difficult domiciliary question facing them as the result of decedent's close association with England for a period of 22 years preceding her death, held that the delay of 19 months in paying the tax was not unreasonable. Without passing on the merit of the grounds urged to excuse the delay in this case, we think it a mistake to permit any remaindermen who may be inclined to speculate, to recoup their losses by resort to a claim of "reasonableness".

It is determinative of this case that we can derive from the Act no authority on our part to pass on the question of reasonableness and thus extend the limitation of time so clearly set forth in the statute. "The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner" means exactly what it says, leaves no room for any but this common sense construction, and is not affected by the prepayment provision: Coxe's Estate, *supra*, page 105.

The executors rely on Leiper's Estate, 40 D. & C. 633, 635, where the hearing judge said that a remainderman "may do one of three things concerning payment of inheritance tax. (1) He may pay his tax at once, valued as of the *date of death*. In such case the life estate is appraised *as of that date* and deducted from the total value. (2) He may wait until the life tenant dies and then pay the tax upon the value of the

estate appraised *as of the date of death of the life tenant,* which is the time when he actually comes into possession. (3) He may pay the tax prior to his coming into possession at a valuation fixed *as of the date of payment."* Section 3 of the Act of 1919, is clearly for the benefit of the remainderman: Heberton Estate, *supra,* at page 568, but Judge (now Mr. Justice) Stearne, in stating the three choices as quoted above, certainly did not mean to imply that the remainderman should have an unlimited time in which to make his election, or that his failure to elect while the life tenant lived did not restrict him to the second alternative. Leiper's Estate, itself, involved the application only of the third alternative (the life tenant still being alive), and Judge Stearne's ruling that the deductible life estate should be evaluated as of the date of payment of the remainder did not touch the issue here involved. In writing the affirming opinion for our court en banc Judge (now President Judge) Klein said (p. 637) :

"The values of the life estate and remainder are variables, which change from day to day. In order *to induce the remaindermen to pay* the taxes due on the estate they inherit *prior to the time they come into possession,* the legislature has given them the right to pay the tax at any time during the continuance of the life estate. This enables them to take advantage of depreciations in market values and thus reduce their tax burden. It also inures to the benefit of the Commonwealth in that it receives the tax before payment is legally bound to be made." (*Emphasis* supplied.)

In Biddle Estate, 82 D. & C. 536, the Orphans' Court of Delaware County held that the remainderman's election to pay after death of the life tenant came too late, even though still within one year of decedent's death. Since no payment whatsoever was

made on the remainder interest until after the death of life tenant, the Commonwealth was entitled to reappraise the remainder as of the date of the life tenant's death.

In the instant case the executors have not claimed any right to the 5% discount available for payment of inheritance tax within three months of decedent's death under section 38, 72 PS §2442, but, as cogently suggested by the Commonwealth, they, nineteen months after decedent's death, would have just as much right to that discount as they would have to elect retroactively to pay tax on a deductible life tenancy and the remainder appraised as of decedent's death. The time limitation for discount has been rigidly set at three months and there are no exceptions, "no excuse will avail, . . . the tax must be paid within the three months, or no discount will be allowed." Nicholson's Estate, 300 Pa. 299, 302.

Likewise, section 3 sets forth just as rigidly the tax demands of the Commonwealth upon remaindermen. Unless payment, or election to pay, is made prior to the death of the life tenant no deduction for the value of the life tenancy can be taken from the tax assessed against the remainderman. This is proper for a deduction is allowed only on the theory that the remainderman is being deprived of the enjoyment of his inheritance while the life tenant lives: Ithaca Trust Co. etc. v. United States, 279 U.S. 151, 155; on his death, ownership of the remainder accrues and enjoyment begins.

It is not only important but mandatory under our Constitution (art. IX, sec. 1), that taxes be uniform. While taxing statutes are to be interpreted in favor of the taxpayer, whenever possible, equitable principles cannot be applied at the sacrifice of uniformity. There is always the danger of the appearance, if not the existence, of laxity or favoritism in tax enforce-

ment. These twin evils breed contempt for the collector, and instill a firm resolve to evade whenever possible.

If the Legislature desires to create an additional classification for remaindermen it is for them to say so, but for them to give the courts *discretion* in fixing in each instance the "reasonable time" for payment of taxes would doubtless introduce such confusion and uncertainty into tax collection as to violate the constitutional requirement of uniformity. A fortiori, in the absence of such statutory authorization, this court is without power to extend the prepayment period for a "reasonable time".

The exceptions of the Commonwealth are sustained and the assessments appealed from are reinstated.