## Altemus Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Charles F. Nahill*, for exceptant.

*Bruce L. Castor* and *Philip A. Bregy*, contra.

OPINION AND DECREE

SUR APPEAL FROM INHERITANCE TAX APPRAISEMENT

BOLGER, J., February 1, 1968—Joseph B. Altemus died February 6, 1912, leaving a will and codicil thereto wherein, inter alia, he left a portion of his residuary estate in trust to pay the net income therefrom to his granddaughter, Ethel Altemus Byrd (later Gates), for her life and upon her death to pay the principal to her issue and, in default of issue, as she should appoint by will. On May 12, 1912, and again on October 2, 1913, the Commonwealth filed inheritance tax appraisements. The first appraised legacies and valued them at $2,600; the second appraised an annuity of $600 and valued it at $2,193.60. Neither appraisement reserved the right to make another.* The personal

---

* The propriety of the second appraisement is not and cannot now be before us; it was apparently acquiesced in by the personal representatives.

representatives filed an inventory and appraisement on August 8, 1912, wherein assets worth $216,986.12 were shown. There is no allegation that such inventory was not complete.

Ethel Altemus Byrd Gates died March 31, 1966, without issue, and by her will she exercised the power of appointment in favor of Chestnut Hill Hospital and St. Luke's Protestant Episcopal Church in equal shares.

On November 15, 1966, the Commonwealth filed a collateral remainder appraisement in which it appraised the assets of the trust as of the date of the life tenant's death at $524,143.09, approved deductions of $22,155.50, and imposed transfer inheritance tax at the rate of five percent on the balance distributable. The tax thus imposed was $25,099.38; it had been paid June 2, 1966, prior to appraisement.

The trustee and the appointees under the life tenant's will have appealed, and that matter is now before us.

Appellants contend that the appraisements of May 12, 1912, and October 2, 1913, were final and conclusive determinations of the interests subject to tax and the value of the property appraised. In the alternative, they argue that if the Commonwealth had a right to file a later appraisement, it voluntarily gave up that right by the Act of May 28, 1956, P. L. 1757, which exempts from inheritance tax certain transfers to charities taking effect after June 1, 1957.

The Commonwealth relies on section 3 of the Act of May 6, 1887, P. L. 79, which provides:

"In all cases where there has been or shall be a devise, descent or bequest to collateral relatives or strangers, liable to the collateral inheritance tax, to take effect and possession, or come into actual enjoyment after the expiration of one or more life estates, or a period of years, the tax on such estate shall not

be payable, nor interest begin to run thereon, until the person or persons liable for the same shall come into actual possession of such estate, by the termination of the estates for life or years, and the tax shall be assessed upon the value of the estate at the time the right of possession accrued to the owner as aforesaid".

It contends that this language permits the Commonwealth to make the appraisal in question and to impose the tax. It cites Carver Estate, 422 Pa. 609 (1966), as authority for this contention. It further contends that the transfer to appellants by virtue of the exercise of the power of appointment by the deceased life tenant is to be deemed a transfer made by the donor of the power at his death and, therefore, having been made prior to the effective date of the Act of May 28, 1956, P. L. 1757, is not a tax-exempt transfer.

Section 12 of the Act of May 6, 1887, P. L. 79, provides:

"It shall be the duty of the register of wills of the county, in which letters testamentary or of administration are granted, to appoint an appraiser, as often as and whenever occasion may require, to fix the valuation of estates, which are or shall be subject to collateral inheritance tax; and it shall be the duty of such appraiser to make a fair and conscionable appraisement of such estates; and it shall further be the duty of such appraiser to assess and fix the cash value of all annuities and life estates growing out of said estates, upon which annuities and life estates the collateral inheritance tax shall be immediately payable out of the estate at the rate of such valuation: Provided, That any person or persons, not satisfied with said appraisement, shall have the right to appeal, within thirty days, to the orphans' court of the proper county or city on paying or giving security to pay all costs, together with whatever tax shall be fixed by

said court; and, upon such appeal, said courts shall have jurisdiction to determine all questions of valuation and of the liability of the appraised estate for such tax subject to the right of appeal to the Supreme Court as in other cases".

It is clear from this language as well as from cases construing similar language in later taxing acts that the appraisement has a dual function, i. e., it fixes the value and determines the liability of the appraised estate for the tax. See Darsie Estate, 354 Pa. 540 (1946); Heberton Estate, 351 Pa. 564 (1945), and Ramsay Estates, 342 Pa. 103 (1941). These cases all hold that a second appraisement to correct an error in judgment made in the first appraisement is a nullity, except when some element of fraud, accident or mistake is present. Thus, in Darsie Estate, supra, the entire estate was appraised and the tax thereon fixed at two percent. Upon the death of the life tenant it became clear that some of the estate would pass to collaterals. The Commonwealth sought to reappraise and tax at 10 percent those assets so passing. The Supreme Court stated:

"We have uniformly decided that when assets of an estate are appraised, and the tax assessed, in the absence of an appeal, the action is final. Justice Simpson said in Rowell's Estate, 315 Pa. 181, at page 183, 173 Atl. 634: 'If this is a final appraisement, as it appears to have been intended to be, it ends the present controversy, for a second appraisement is without authority in law: Moneypenny's Est., 181 Pa. 309' ".

The appraisements of May 12, 1912, and October 2, 1913, taken as a whole, appear to have been intended to be a final appraisement. The appraiser did not value or assess a tax on the assets passing into the trust in question, because he apparently assumed that no tax was then or could thereafter become due thereon in view of the fact that the life tenant and primary re-

maindermen were lineals and that no inheritance tax was then assessed on property passing to lineals. In Heberton Estate, supra, the residuary estate was left in trust to pay income to decedent's wife and daughter. Principal was distributable upon their deaths among their issue and, in default of issue, to certain charities. The Commonwealth assessed the tax on the entire residue at the rate applicable to property passing to lineals. Subsequently, the principal became distributable to the charitable remaindermen, and the Commonwealth sought to assess a further tax by filing a second appraisement. The Supreme Court, adopting the opinion of the lower court, held that the second appraisement was a nullity. The opinion of the lower court stated, in part:

"Throughout the long history of transfer inheritance tax in this state the courts have always held that the appraisement made by the appraisers must be considered as final and, in the absence of fraud, accident, or mistake, the only remedy for an erroneous exercise of judgment by the appraiser is an appeal in accordance with the provisions of the statute. A second appraisement to revise the judgment of the appraiser has always been regarded as a nullity and held to be without authority in law: Moneypenny's Estate, 181 Pa. 309 (1897); Rowell's Estate, 315 Pa. 181 (1934); Ernst's Estate, 317 Pa. 367 (1935); Ramsay's Estates, 342 Pa. 103 (1931)".

In view of the above-cited cases, we would be constrained to sustain the appeal. The question is, however, did Carver Estate, supra, change the law of those cases?

In Carver, decedent created an inter vivos trust in 1906 wherein the income was payable to himself for life, then to his wife until her death or remarriage. Upon termination, the principal was payable to settlor's children or, in default of children, as he should

direct in his will.

Settlor died in 1919 survived by his wife but by no issue. By his will he directed that the principal be paid to eight designated relatives. The assets of the trust were not disclosed to the inheritance tax appraiser; the inventory included only the testamentary assets, despite the fact that the trustee and executor were the same person.

The trust terminated upon the wife's death in 1963. An appraisement of the trust was then filed and a tax assessed on the entire principal. An appeal was then taken. Both the lower court (Carver Estate, 15 Fiduc. Rep. 437 (O. C. Del., 1965)), and the Supreme Court held on the basis of the 1919 Act that the appraisement was proper. The act provides:

"Where there is a transfer of property by . . . bequest . . . , liable to the tax hereinbefore imposed, which . . . bequest . . . is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life estates or a period of years, the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. The tax shall be assessed upon the value of the estate at the time the right of possession accrued to the owner, but the owner may pay the tax at any time prior to his coming into possession. In such cases the tax shall be assessed on the value of the estate at the time of the payment of the tax, after deducting the value of the life-estate or estates for years . . .": Act of June 20, 1919, P. L. 521, sec. 3.

Except for the option to prepay, the language of the two statutes is substantially similar. In Carver, both courts held that since the right of possession did not accrue until the expiration of the wife's life estate, it was not until that time that an appraisal of any

legal significance could have been made by the Commonwealth. It should be noted that in Carver an appraisal of the trust principal could not have been made in 1919, because the assets composing it were never brought to the appraiser's attention.

Does Carver overrule those cases which hold that an appraisement has two functions, i. e., to determine both the liability for the tax and the value of the assets subject to it? The Supreme Court cites and distinguishes Darsie Estate, supra, and Heberton Estate, supra, on their facts without overruling them. It must be concluded that they have continuing vitality.

The facts in Carver Estate show that there was inadequate disclosure of the existence of the 1906 trust and the assets comprising it. In the instant case, all of the assets comprising the trust principal were revealed to the appraiser. Consequently, it differs significantly from Carver. It should also be noted that Carver deals with a different taxing statute than the one presently under consideration. Carver is a significant departure from prior case law. We are of the opinion that it should be limited to its facts. Because there was no disclosure of the trust at the time the original appraisement was made, it is really dealing with the proper time to make an original appraisement; an appraisement based on assets of the testamentary estate cannot constitute a conscious decision concerning the taxability of the 1906 trust. In the instant case, the failure to appraise the assets comprising the testamentary trust must have been a conscious decision concerning its taxability, since that is and has always been one of the functions of an appraisement. Of course, had the Commonwealth reserved the right to reappraise upon the termination of the life estate, there could be no doubt about the propriety of doing so: Reynolds Estate, 359 Pa. 616 (1948).

I conclude as a matter of law that the appraisement dated November 15, 1966, was without authority under the statute and the law.

In view of the foregoing conclusion of law, it is unnecessary to pass upon appellants' other contention.

For the foregoing reasons, I enter the following

DECREE

And now, February 1, 1968, it is hereby ordered and decreed that the appeal of the First Pennsylvania Banking and Trust Company, trustee, and of Chestnut Hill Hospital and St. Luke's Protestant Episcopal Church, appointees under the will of Ethel Altemus Byrd Gates, be and it is hereby sustained; and the record is remanded to the register of wills for proceedings not inconsistent with this opinion.

OPINION SUR EXCEPTIONS

LEFEVER, J., May 17, 1968.—The narrow issue raised by these exceptions is whether Carver Estate, 422 Pa. 609, has overruled the well-entrenched rule of Darsie Estate, 354 Pa. 540, Heberton Estate, 351 Pa. 564, Ramsay Estates, 342 Pa. 103, and Reynolds Estate, 359 Pa. 616, that an assessment of transfer inheritance tax by the Department of Revenue is final, unless it is appealed in timely manner or a right to tax the remainder interest is reserved.

There is no need to restate the facts in the instant case and the cited cases. They were fully set forth in the scholarly opinion of the learned hearing judge. We agree completely with his conclusion that no tax is due. However, in view of the position taken by the Commonwealth that Carver Estate has changed the basic law with respect to the finality of assessments in transfer inheritance tax matters, we have carefully examined the briefs and records filed with the Supreme Court in Carver Estate, Darsie Estate, Heberton Estate and Reynolds Estate.

It is noteworthy that the original appraisement in Carver Estate does not appear in the Supreme Court record of that case. Only the later appraisement of 1964, evaluating the remainder interest, is included. We have examined the inventory filed in that case; it does not contain any reference to the deed of trust or the life estate at issue therein. Moreover, President Judge Van Roden in his opinion, 15 Fiduc. Rep. 437, 438, et seq., states:

"No mention was made in the inventory of the assets held by the trustee under the 1906 deed of trust, despite the fact that the trustee and executor were the same person; namely, decedent's brother. . . . A review of that [inheritance tax] file discloses a copy of a letter dated March 16, 1920, apparently sent by the attorney for decedent's executor to George E. Hill, Inheritance Tax Appraiser, Office of Register of Wills, Media, Pennsylvania. In that letter the assets of the estate were summarized, deductions itemized, and the net taxable estate computed by said attorney. This letter, however, made no mention of the assets held under decedent's 1906 Deed of Trust. The report of the official appraiser appointed to determine the amount of transfer inheritance tax due, also makes no mention of the assets held under said trust. . . . Accordingly, there is no merit in appellant's position that the appraisement of March 2, 1964 is an attempt, forty-four years later, to impose a transfer inheritance tax on an asset which the Commonwealth had overlooked and should have taxed immediately after decedent's death in 1919".

It is clear from the foregoing and the position taken by counsel in the briefs filed with the Supreme Court that the learned hearing judge in the instant case correctly held that the issue in Carver Estate was the determination as to whether an original appraisement was proper and *not* whether the Commonwealth has

the right to make a *second appraisement or a reappraisement.*

In Darsie Estate, the appraisement and assessment of tax, filed in 1928, set forth the entire real and personal property of decedent's estate. As pointed out by the Supreme Court, there was no effort to restrict the tax to the life estate of the widow, no reservation of a right to tax the remainder and no appeal from the assessment. Hence, the 1928 assessment was held to be final.

In Heberton Estate, the inventory, appraisement and tax assessment, filed in 1929, disclosed all of the assets of decedent's substantial estate. The tax was computed on the full amount. As ably stated by our own President Judge Klein for a unanimous court, ". . . the taxing authorities studied the will and the circumstances existing at the time of the testator's death carefully before they assessed the tax. . . . They had the right to reserve the question of the rate of tax until the time of the widow's death. Instead of doing this, they chose to accept with finality both the valuation of the estate and the rate of tax. They are now conclusively bound by the assessment and cannot be heard to challenge it".

The Supreme Court "Affirmed on the opinion of Judge Klein".

In contrast, in Reynolds Estate the tax assessment expressly provided "Reservation is hereby made to the Commonwealth of Pennsylvania of the right to appropriately tax any distribution made upon the death of the Life Tenant, Ruth C. Reynolds, to the collateral heirs named in Article 17 of the decedent's will". Upon the life tenant's death, it was argued that the assessment was final. However, the Supreme Court ruled that the foregoing express reservation in the assessment protected the Commonwealth and, under such circumstances, the original assessment was not final.

In contrast, full and complete disclosure of all the assets was originally made to the tax appraiser in the instant case. He filed appraisements on May 12, 1912, and October 2, 1913, without taxing the assets now at issue. It follows that the facts in the instant case are vitally different from Carver Estate. Therefore, the ruling in Carver Estate does not apply. Hence, in our opinion there is no merit to the exceptions.

In view of our conclusion that the remainder interest in question is not subject to tax, we agree with the learned hearing judge that it is unnecessary to pass upon appellants' additional contention that property passing to charity pursuant to the exercise of a general power of appointment subsequent to the effective date of the Act of May 28, 1956, P. L. 1759, amending the 1919 Act, is exempt from the imposition of transfer inheritance taxes.

Accordingly, for the reasons contained in the opinion of the learned hearing judge, and the additional reasons contained herein, the exceptions are dismissed and the decree is confirmed absolutely.