We are all in complete agreement with the Auditing Judge that it would be unconscionable to permit the Commonwealth to enforce payment of the additional transfer inheritance tax which it is now endeavoring to collect. Had the present claim been made when the *Page 565 
original tax was assessed in 1929, the Commonwealth would have been compelled to allow full credit for the entire tax in its assessment of the additional tax which it received under the provisions of the Act of May 7, 1927, P. L. 859, and the net amount received by it would have been exactly the same whether the tax had been assessed at the 2% rate or the 10% rate now being claimed. Furthermore, the will provided that all inheritance and transfer taxes be paid out of the corpus of the estate. It would be most inequitable to permit the Commonwealth to lull the parties into an assurance that the taxes have been paid in full and then, after the passage of many years, make a new claim for tax long after the entire estate had been adjudicated and the corpus distributed. But, even if we disregard the overwhelming equities of the situation, we would be compelled to conclude that the additional tax claimed is uncollectible because, the Commonwealth is conclusively bound by the appraisement when the tax was assessed at the time of the decedent's death.
Throughout the long history of transfer inheritance tax in this state the courts have always held that the appraisement made by the appraisers must be considered as final and, in the absence of fraud, accident, or mistake, the only remedy for an erroneous exercise of judgment by the appraiser is an appeal in accordance with the provisions of the statute. A second appraisement to revise the judgment of the appraiser has always been regarded as a nullity and held to be without authority in law: Moneypenny's Estate, 181 Pa. 309 (1897); Rowell's Estate,315 Pa. 181 (1934); Ernst's Estate, 317 Pa. 367 (1935);Ramsay's Estates, 342 Pa. 103 (1931).
This firmly intrenched principle was changed by the Act of June 24, 1939, P. L. 721, which permits the filing of a second appraisement to include assets omitted from the first appraisement due to mistakes of judgment of the appraiser. This act cannot, however, have any application *Page 566 
to the present case, because it provides that the supplemental appraisement must be made within one year from the date of the decedent's death.
In Ernst's Estate, supra, the decedent died March 2, 1932. He had in his lifetime donated large sums of money to various religious and charitable institutions, conditioned upon their paying him annually interest on the gifts for the remainder of his life. An appraisement was filed April 28, 1932, which became confirmed absolutely because no appeal was filed within the period allowed by the statute. Accrued interest due on these annuity contracts were included in this appraisement, but the principal sums were omitted. About eight months later, on December 12, 1932, the state tax appraiser filed what he called a supplemental appraisal, in which he endeavored to value and appraise for tax purposes the principal of the various annuity contracts. The executors of the estate, as well as the donees, appealed. Judge APPEL, scholarly President Judge of the Orphans' Court of Lancaster County, sustained the appeal and held the second appraisement to be a nullity. Judge APPEL said: "We find as a fact that a full disclosure of the contracts was made by the executors to the tax appraiser; that they were before the field appraiser for examination and appraisal; that he had full opportunity to and did examine them; that when he appraised the annuity on each contract, but not the principal, he did so in the exercise of his deliberate judgment that the principal was not liable for the tax. We find also that due report of the appraisement was made to Taylor, the chief appraiser, adopted and filed by him with a full knowledge of all the facts. After the expiration of the time for appeal, the question was not an open one and the appraisal was conclusive on all parties. The outstanding authority on the immediate question under consideration is Moneypenny's Estate, 181 Pa. 309
(where it was held that), in the absence of fraud, accident or mistake, there cannot be a second appraisement of property for the *Page 567 
purpose of the collateral inheritance tax. The only remedy for an erroneous exercise of judgment by the appraiser is an appeal. A second appraisement to revise the judgment of the appraiser is without authority of law."
This decision was affirmed per curiam by the Supreme Court on Judge APPEL'S opinion.
In our opinion, it makes no difference whether the mistake of judgment applies to the taxability of an asset, as in theErnst case, or a mistaken conclusion that the remainder will be subject to the collateral tax instead of the direct. In either case, the assessment is final and conclusive on both the taxpayer and the Commonwealth and cannot be challenged except by an appeal.
A letter dated November 7, 1929, signed by R. L. Parkinson for the Tax Department of the Pennsylvania Company, etc., sent to the Register of Wills was offered in evidence. This letter states: "* * * the remainder of the Estate goes to direct heirs and it is the desire of the Executors to pay a flat 2% tax." The Commonwealth suggests that they were misled by this erroneous statement and hence entitled to collect the additional tax. This is completely without merit. The Girard Trust Company was the trustee named in the will for this particular trust. The executors were two individuals, Mary Cooke Heberton, the wife, and J. Morris Wistar, a son-in-law. The Pennsylvania Company, etc., was designated as trustee for the principal trusts created by the will, but it had nothing to do with the trust fund, which is the subject matter of the present controversy. Under these circumstances, the Commonwealth clearly had no right to place any reliance whatsoever upon the casual statement of a clerk in the tax department of this company.
It is obvious from a study of this record that it is completely devoid of any evidence from which fraud, accident or mistake could be inferred. As a practical *Page 568 
matter, it made no difference to the Commonwealth whether the tax was assessed at 2% or 10%, as in either case the net amount received by them would be identical. The appraiser therefore apparently treated as purely academic the question as to who the ultimate recipients of the corpus of this trust would be.
Section 3 of the Act of June 20, 1919, P. L. 521, which is a substantial re-enactment of Section 3 of the Act of May 6, 1887, P. L. 79, is clearly intended for the benefit of the remaindermen and gives them the right to elect when they wish to pay the transfer inheritance tax. It is also clear that assessment of the tax shall be on the value of the estate at the time the tax is paid. This protects the remaindermen against inflationary rises in values and enables them to fix with finality the amount of their tax liability without being compelled to speculate on future economic developments. At the same time, if the tax is paid before the remaindermen come into actual possession, the Commonwealth is protected against future drastic reduction of the value of the corpus, which in the present case was in excess of 50% of the appraised value.
The testator's will was an involved instrument, disposing of an estate in excess of a million dollars. The provision with respect to the trust of $100,000.00 for decedent's wife was lengthy and intricate. We must take it for granted that the taxing authorities studied the will and the circumstances existing at the time of the testator's death carefully before they assessed the tax. They must have known that no children were born of the marriage with the wife who survived him and that there was a strong probability that the fund would ultimately pass to collaterals. They had the right to reserve the question of the rate of tax until the time of the widow's death. Instead of doing this, they chose to accept with finality both the valuation of the estate and the rate of tax. They are now conclusively bound by the assessment and cannot be heard to challenge it. Let us *Page 569 
assume, for the sake of argument, that in the present case the shoe had been on the other foot. Suppose the tax had been assessed at 10% on $100,000 and the widow appointed the remainder in favor of her stepchildren, the children of the testator. Let us suppose, also, that the estate had diminished in value to $5,000. Could the overpayment be recovered from the state? Obviously not, because the assessment was final and conclusive. By the same measure the Commonwealth must be bound by the original assessment.
We will conclude by borrowing the sentence with which our former colleague, Mr. Justice ALLEN M. STEARNE, terminated his scholarly opinion in Mellon Estate, 347 Pa. 520, 536 (1943): "In the present case we believe that the decree could be sustained either upon the terms of the statute or upon the broad principle of equity here discussed."
The exceptions are dismissed, and the decree of the Hearing Judge is sustained.
Commonwealth appealed.