**Sheehan Estate**

*Charles F. Nahill,* for Commonwealth.

*George F. Douglas, Jr.,* for accountants.

BOLGER, J., January 27, 1969.—This decedent died on June 27, 1964, leaving a will dated May 25, 1960, which was duly admitted to probate. She was married at the time of her death and was survived by her husband, Edward A. Sheehan, but no issue.

Letters testamentary were granted the accountants on July 6, 1964; proof of publication of the grant of same was submitted and is annexed hereto.

Payments of transfer inheritance tax prior to appraisement, $481.43 on January 4, 1965, and $1,567.70 on February 7, 1966, were duly vouched.

By the terms of her will, a copy of which is annexed hereto, testatrix gave premises 600-602 N. 64th Street, to George F. Douglas, Jr., and Catherine Wyatt. She gave the $2,000 mortgage she held on premises 2031 S. 56th Street to George F. Douglas, Jr.; her personal account in the Philadelphia Savings Fund Society to Catherine Wyatt; all furniture, silver, china, glassware, linens, and paintings to George F. Douglas, Jr., and Catherine Wyatt; gold coins in her safe deposit box and man's stick pin to George F. Douglas, Jr.; man's diamond ring in box to Catherine Wyatt; all remaining jewelry equally to George F. Douglas, Jr., and Catherine Wyatt; her diamond ring to her grandniece, Patty Douglas; $500 to the pastor of St. Callistus Church for Masses for deceased members of the Douglas and Edward A. Sheehan Families. She appointed Edward A. Sheehan and George F. Douglas, Jr., as executors.

Annexed hereto is a family agreement executed by Edward A. Sheehan, Catherine Wyatt, and George F. Douglas, Jr., wherein it is recited that Edward A. Sheehan, decedent's husband and one of the accountants herein, had made known to the other parties the fact that he had elected to take against the will of his wife. The parties agreed that the diamond ring bequeathed to Patty Douglas should be awarded to her, that the $500 bequest to the pastor of St. Callistus Church should be reduced to $250, and that the balance of the estate be distributed as follows: 52% to Edward A. Sheehan, 41 percent to Catherine Wyatt, and 7 percent to George F. Douglas, Jr. The pastor of St. Callistus, Msgr. Kelley, has consented to the reduction of the legacy to him; his consent forms part of the family agreement. Included among the papers submitted by the accountants is a notice of election executed by Edward A. Sheehan. It is dated February 2, 1966, but it does not appear that such notice was ever filed or recorded. The family agreement in substance recognizes the timeliness of the election by the surviving spouse vis-a-vis the legatees and devisees. The Commonwealth opposes the allowance of the spouse's election to take against decedent's will; this opposition is based on its interest in the collection of inheritance tax since, if the election is disallowed for inheritance tax purposes, that tax will be imposed at the rate of 15 percent on the entire estate except that actually passing to the charity.

Sections 10, 11 and 12 of the Wills Act of April 24, 1947, P. L. 89, 20 PS §180.10-12, direct the manner and the place in which elections are to be filed. Section 11 provides for the manner of the notification of the exercise of the right of election and directs that such election must be made within one year of probate unless the time is extended by the court. Section 12 provides that if an election is not filed within the time

limits provided, it is deemed to be an acquiescence in the provisions of the will.

By stipulation, all legatees and devisees who would be adversely affected by the allowance of the election have agreed that it be permitted and have stated that they were in fact informed of the surviving spouse's intention well within the period set forth in the statute. Furthermore, the surviving spouse and Catherine Wyatt, a legatee and devisee, both testified that all parties were informed of the surviving spouse's election well within the statutory period.

Distribution will, of course, be made in accordance with the family agreement. The question to be resolved is, under the circumstances of this case does the Commonwealth have the right to inheritance tax at the rate of 15 percent on the estate remaining after payment of the charitable bequest?

The following facts are set forth in a stipulation of counsel:

1. On January 4, 1965, an inheritance tax return (denominated inventory in the stipulation) was filed by the executors with the Bureau of County Collections for Philadelphia County. In Schedule "D" of that return the interest of the surviving spouse, Edward A. Sheehan, was set forth at 50 percent and the one charitable bequest in the will, a $500 bequest to St. Callistus Church, was set forth at $250.

2. On June 25, 1965, the Inheritance Tax Division gave notice of the filing of its appraisement setting forth the charitable exemption of $250 and assessing the tax on one half of the remaining estate (presumably the portion to be distributed to Edward A. Sheehan) at 2 percent, the other one half at 15 percent. It does not appear that any party in interest, including the Commonwealth, availed himself of any of the methods (i.e., protest, election to have matter determined at audit, or appeal) set forth in 1001 of the

Inheritance and Estate Tax Act of June 15, 1961, P. L. 373, 72 PS §2485-1001, to contest the propriety of this appraisement and assessment. We find that they did not. Nor does it appear that there was reserved any right to reappraise or reassess.

All inheritance tax returns when filed must be accompanied by a copy of the will if there is one. Therefore, the Commonwealth's appraiser had before him the will in which testatrix gave her surviving spouse nothing and the return itself which set forth his interest at 50 percent. It apparently made no effort to determine whether or not an election had been duly filed, but instead made its appraisement and assessment. Once filed, the appraisement and assessment functions to fix the value and determine the liability of the estate for taxes: Darsie Estate, 354 Pa. 540 (1946); Heberton Estate, 351 Pa. 564 (1945); Ramsay Estates, 342 Pa. 103 (1941); Altemus Estate, 44 D. & C. 2d 499. These cases hold that an appraisement, unless appealed from, is binding on all parties and that a second appraisement to correct an error in judgment made in the first appraisement is a nullity except when there is some element of fraud, accident or mistake. The appraisement filed in this estate also operated as an assessment because it not only fixed the value of the estate, but set forth the rate of tax to be applied and the amount of tax due.

The issue of the validity of the election was raised at audit by counsel for the Commonwealth. While the Commonwealth has every right to appear at audit to scrutinize the accounts of fiduciaries and to object to items which vary from the inheritance tax returns filed, if the information contained in the account and in the audit papers is substantially identical with the information contained in the return, so that there is no showing of fraud, accident or mistake, then the Commonwealth cannot by making objections at audit

seek in effect to either reappraise or reassess when the right to do so has not been reserved. A second appraisement or assessment is without authority in law.

I conclude as a matter of law that since the Commonwealth had all the information or the means of obtaining all the information it needed to know that an election had not been timely filed and since it made an appraisement and assessment based upon information in the return, it has no standing to make objections at the audit of the account. Such objections are in effect an attempt to make a second appraisement. Having acted with full knowledge of the facts in making the original appraisement and assessment it may not make a second assessment.

Section 801 of the Inheritance and Estate Tax Act of June 15, 1961, supra, gives the Commonwealth a lien, for the taxes imposed, upon the real property included in the transfer subject to the tax. Section 13 of the Wills Act of April 24, 1947, supra, states that an election is void as against a bona fide grantee of or lienholder on real estate, if the election is not recorded within one year after probate. The Commonwealth argues from these two provisions that as against it the election is void and it is not bound thereby. We find no difficulty in disposing of this contention. The extent of the lien for taxes was fixed by the Commonwealth when it appraised the estate and assessed the tax. This was done prior to the time within which the election may have been filed. Since it cannot reappraise or reassess under the circumstances of this case, its lien, as originally determined by its appraisement and assessment, remains intact and it is not prejudiced or harmed by the failure to record the election. Its lien is only as large as its properly assessed claim for taxes. That the lien is not as large as it might have been is due to the precipitate action of the Commonwealth.

Elections are to be liberally construed: Levin Estate (No. 1), 30 D. & C. 2d 63 (O. C., Phila. 1963). The surviving spouse should be and is entitled to all the favorable incidents of his election, inheritance taxation at the most favorable rate being included.

And now, January 27, 1969, the account is confirmed nisi.