331 A.2d 161
In re ESTATE of William H. BEESON, Deceased.

Appeal of GIRARD TRUST BANK, Executor and Trustee under the Will of William H. Beeson, Deceased.

Supreme Court of Pennsylvania.
Argued Nov. 26, 1973.
Decided Jan. 27, 1975.

614

G. Selden Pitt, Philadelphia, for appellant.

Israel Packel, Atty. Gen., Catherine G. Barone, Asst. Atty. Gen., Vincent P. Dopko, Deputy Atty. Gen., Vincent X. Yakowicz, Spec. Deputy Atty. Gen., Harrisburg, for appellee, Commonwealth of Pa.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

This is an appeal from a decree dated January 11, 1973, sustaining the action of the Commonwealth in appraising and assessing an inheritance tax on certain remainder interests in the estate of William H. Beeson. The issue presented is whether the April 29, 1937 assessment, which assessed tax on the life interest of the widow only, was a final assessment so as to preclude the September 22, 1970 assessment of tax on the remainder interests.

William H. Beeson, a resident of Montgomery County, Pennsylvania, died on May 13, 1936. The decedent left a will, duly probated, which provided for a residuary trust with income to his wife, Dora Buss Beeson, for her life, together with a power to invade the principal. Upon her death, the income was to be paid in equal shares to three nieces: Kathryn Beeson Wirsing, Louise Beeson (later Louise Beeson Stuber), and Kathryn Wirsing Lofgren. Each was given a power of appointment over the principal supporting her income interest. The will further provided for specific bequests to named beneficiaries and

for annuities in favor of each of the nieces in the amount of $500.00 per annum.

Decedent's widow died on October 4, 1964. She was predeceased by Kathryn Beeson Wirsing, whose share of principal was distributed to her appointee in 1965. Kathryn Wirsing Lofgren still survives. The third niece, Louise Beeson Stuber, survived decedent's widow but died in 1969 and under an adjudication dated April 22, 1970, her share of the principal was awarded to her appointees. On September 22, 1970, the Commonwealth assessed inheritance tax on this outgoing share, and it is the validity of this action which the appellant now challenges.

The original appraisement, which was filed on April 29, 1937 valued the net estate subject to tax at $178,059.-29. Inheritance tax in the amount of $3,605.94 was assessed upon the value of the specific bequests, the annuities to the three nieces, and the widow's life estate. The last item in the appraisement and assessment which follows clearly shows that tax was assessed only on the estimated present value of the widow's life estate—$65,007.-20—and not on the remainder estate.

| | | |
|---|---|---|
| Spec. bequest to widow | 92.25 at 2% | 1.85 |
| Spec. bequest to sister-in-law | 5,000.00 at 10% | 500.00 |
| K. B. Wirsing, age 45 years. (11.105) $500 per annum val. at | 5,552.50 at 10% | 555.25 |
| L. Beeson, age 43 years (11.407) $500 per annum val. at | 5,703.50 at 10% | 570.35 |
| X. W. Lofgren, age 25 years (13.567) $500 per annum val. at | 6,783.50 at 10% | 678.35 |
| | 23,131.75 | |
| Life Estate widow age 60 years (8.392) val. at | 154,926.54 | |
| | 65,007.20 at 2% | 1,300.14 |
| | | 3,605.94 |

Although the entire corpus of the residuary trust was appraised for the purpose of determining the worth of the life estate, no assessment was made as to the remainder estates.

Appellant argues that in the absence of an express reservation in the original appraisement, the Commonwealth may only reappraise an item included in that appraisement where fraud, accident, or mistake is proven, or where a successful appeal is taken within the prescribed statutory period. Since there is no suggestion of fraud, accident, or mistake in the present record, and since no appeal was taken from the original appraisement, appellant contends that the Commonwealth's failure to reserve the right to reappraise the trust corpus precludes the present appraisement and assessment of inheritance tax against the remainder estate.

The Inheritance Tax Transfer Act of June 20, 1919, P.L. 521, as amended, 72 P.S. § 2301 et seq. (repealed and replaced by Act of June 15, 1961, P.L. 373, 72 P.S. § 2485–1201) which was applicable to the estates of decedents dying before January 1, 1962, provides the following with regard to the taxable transfer of a future interest:

"Where there is a transfer of property by . . . bequest . . ., liable to the tax hereinbefore imposed, which . . . bequest . . . is to take effect in possession or to come into actual enjoyment after the expiration of any one or more life-estates or a period of years, the tax on such estate shall not be payable, nor shall interest begin to run thereon, until the person liable for the same shall come into actual possession of such estate by the termination of the estates for life or years. *The tax shall be assessed upon the value of the estate at the time the right of possession accrues to the owner,* but the owner may pay the tax at any time prior to his coming into possession. In such case *the tax shall be assessed on the value of the estate at the time of the payment of the tax,* after deducting the value of the life-estate or estates for years . . ." (Emphasis added.)

Act of June 20, 1919, P.L. 521, § 3, 72 P.S. § 2304.

In Carver Estate, 422 Pa. 609, 222 A.2d 882 (1966), we had occasion to interpret and apply the above statutory provision to a factual situation similar to that in the present case. In *Carver*, the decedent created an inter vivos trust which provided for certain life estates, following which the principal was to pass to his children, or in default thereof, to whomever he might appoint by will. The decedent died without issue and exercised his testamentary power of appointment to named beneficiaries. An appraisement was made which did not include the remainder interests as to which the decedent had exercised his power of appointment. Upon the termination of the life estates, an appraisement was made of the remainder interest which then came into possession. An appeal was filed by the *Carver* trustees who argued that the Commonwealth was precluded from appraising and assessing the remainder interests by its failure to do so in its original appraisement and by its failure to expressly reserve the right to future valuation. We rejected this argument and held that the Commonwealth was not barred under the theory of finality of appraisement from making a remainder appraisement since, absent an election to prepay the tax, it could not properly do so until the future interest actually came into possession or enjoyment.

In so holding, we said in Part:

"As a reading of this section of the Act makes clear, the inheritance tax imposed upon future interests is to be based upon the value of those interests at the time the ultimate owner either prepays the tax or actually comes into possession or enjoyment of the property. Thus, an appraisal of the value of such interests at any other time would constitute a meaningless act. Even if the Commonwealth had appraised the remainder interests under the 1906 deed of trust at the time of decedent's demise, as appellants contend it was required to do, a second appraisement would now be re-

quired in order to comply with the statutory direction that the tax be assessed 'upon the value of the estate at the time the right of possession accrues to the owner.' Act of June 20, 1919, P.L. 521, § 3, 72 P.S. § 2304. In the instant case, the right of possession did not accrue until the expiration of the interest of decedent's wife in 1963. It was, therefore, not until that time that an appraisal of any legal significance could have been made by the Commonwealth. We are unable to adopt a construction of the Act of 1919 which would place upon the Commonwealth the duty to engage in an appraisement of future interests which would be binding upon neither itself nor the ultimate owner of the interest appraised."

*Id.* at 613, 222 A.2d at 884–885.

■ Appellant attempts to distinguish the present case on the basis that the trust corpus in *Carver* was not revealed to the appraiser and consequently not included in the original appraisement, whereas in the present case, the corpus was included in the original assessment. This factual distinction, however, does not support a legal distinction. We explicitly stated in *Carver* that, even if the corpus had been included in the original appraisement, a reappraisement would have been required when the remainder interests vested in possession. Thus, the failure to value the remainder estate in the original appraisement does not affect the Commonwealth's authority to reappraise the remainder interests at the conclusion of the life estate.

■ The Commonwealth may suspend any item in the appraisement or assessment until its final determination. Reynolds Estate, 359 Pa. 616, 60 A.2d 57 (1948). Where the item suspended has a clear present value, the Commonwealth must expressly reserve the right to a later appraisement and assessment or else be precluded from recovering the appropriate tax. Haid Estate, 347

Pa. 159, 32 A.2d 25 (1943). However, we are unable to interpret the Act as requiring, either expressly or impliedly, that the Commonwealth must at the time of the original appraisement affirmatively reserve the right to reappraise and assess *remainder estates* when they vest in possession or enjoyment. The statute specifically denies to the Commonwealth the authority to assess or demand payment from the holder of a future interest until that interest comes into possession unless there is an election *by the holder* to prepay the tax. The Commonwealth need not reserve a right which it does not possess.

Appellant argues that a contrary conclusion is required by Darsie Estate, 354 Pa. 540, 47 A.2d 815 (1946); Heberton Estate, 351 Pa. 564, 41 A.2d 654 (1945); Rowell's Estate, 315 Pa. 181, 173 A. 634 (1934). This same argument was made and rejected in *Carver.* In the cases cited by appellant, we have held that where the assets of an estate have been appraised for inheritance tax purposes *and the tax thereon assessed,* the action is final in the absence of an appeal and in the absence of fraud, accident or mistake. A second or supplemental appraisement is then a nullity. The crucial element in those cases was not the inclusion of an asset in the original appraisement nor was it the lack of an express reservation of the right to reappraise but rather it was the Commonwealth's *erroneous assessment and collection of tax.* In such cases we reasoned that "[i]t would be most inequitable to permit the Commonwealth to lull parties into an assurance that the taxes have been paid in full and then, after the passage of many years, make a new claim for tax long after the entire estate had been adjudicated and the corpus distributed." Heberton Estate, 351 Pa. 564, 565, 41 A.2d 654, 655 (1945). In the present case, however, *tax was not assessed on the remainder estates at the time of the original appraisement.* Therefore, the parties in interest could not rea-

sonably have believed that the tax liability of the estate had been satisfied in full.

Decree affirmed. Each party to pay own costs.

JONES, C. J., did not participate in the consideration or decision of this case.