510 A.2d 850

In Re: Estate of Edna M. Welsh. Commonwealth of Pennsylvania, Department of Revenue, Appellant.

Argued April 10, 1986, before Judges MACPHAIL and Palladino, and Senior Judge BARBIERI, sitting as a panel of three.

*Vincent J. Dopko,* Deputy Attorney General, with him, *Catherine R. Barone,* and *LeRoy S. Zimmerman,* Attorney General, for appellant.

*John F. Meigs,* with him, *Martha R. Hurt* and *George C. McFarland, Jr.;* Of Counsel: *Saul, Ewing, Remick & Saul,* for appellee.

OPINION BY JUDGE MACPHAIL, June 2, 1986:

The Commonwealth appeals from an order of the Orphans' Court of Montgomery County awarding a refund to Charles N. Welsh, Jr., executor of the estate of Edna M. Welsh, deceased, (Appellee) in the amount of $150,090.39 plus interest. We will affirm.

Edna M. Welsh died testate on October 5, 1981 and letters testamentary were granted to Appellee on October 14, 1981. On July 2, 1982, Appellee filed the Pennsylvania Inheritance Tax Return (Return) in which he listed a net value subject to tax of $2,302,202.95 (line 14) and the following assessment of tax:

ASSESSMENT OF TAX:

15. Amount of line 14 taxable
at 6% rate      (15) *1,667,671.02* x. 06 = *100,060.26*

16. Amount of line 14 taxable
at 15% rate      (16)    *17,817.00* x. 15 = *2,672.55*

17. Principal Tax Due      (17) *102,732.81*

Included with the Return was a letter which stated the following:

> I also enclose a check drawn to the order of 'Register of Wills, Agent' in the amount of $252,823.20. The tax due as shown on the Return is $102,732.81, a figure that is based upon our understanding that the transfers in this Estate to step-grandchildren are taxed at the 'A' or lineal rate in accordance with the decision of the Federal District Court in Estate of Kunkel. However, we are paying the larger figure in order to have paid on the possibility that the transfers to step-grandchildren might be deemed to be class 'B' or collateral transfers. We will shortly be filing a Petition for Refund with the Board of Finance and Revenue in Harrisburg.

*See also* Schedule "J" Beneficiaries, enclosed with the Return, which fully disclosed the inheritance to the step-grandchildren. On July 7, 1982, Appellee filed a petition for refund in the amount of $150,090.39 plus interest.

On August 16, 1982, the Commonwealth, through its appraiser, appraised the estate as follows:

ASSESSMENT OF TAX:

15. Amount of line 14 taxable
at 6% rate      (15) *1,667,671.02* x. 06 = *100,060.26*

16. Amount of line 14 taxable
at 15% rate      (16)    *17,817.00* x. 15 =  *2,672.55*

17. Principal Tax Due      (17) *102,732.81*

*TAX CREDITS:*

| Payment Date | Receipt # | Discount (+) Interest (-) | Amount Paid |
|---|---|---|---|
| 07-02-82 | 044171 | .00 | 252,823.20 |

THIS ASSESSMENT IS BASED *TOTAL TAX CREDIT*
ON: ORIGINAL RETURN                 252,823.20
NO INTEREST IS DUE     *BALANCE OF TAX DUE*
IF PAID BY 07-05-82                   *150,090.39CR*

*Section 1001 of the Inheritance and Estate Tax Act of 1961 (Act of 1961), Act of June 15, 1961, P.L. 373, as amended, formerly* 72 P.S. §2485-1001[1] provided that any party in interest, including the Commonwealth, not satisfied with the appraisement and/or assessment must file an appeal or protest within sixty days after receipt of the objected-to notice. The Commonwealth did not file its protest until October 16, 1982, sixty-one days after receipt.

The Department of Revenue, Board of Appeals (Board) subsequently dismissed the Commonwealth's protest. On November 24, 1982, Appellee filed an amended petition for refund.[2] On January 24, 1983, the Board found the following facts:

2. Pursuant to Section 1108(b)(4) of [T]he Fiscal Code, 72 P.S. §1108(b)(4), Petitioner is requesting a cash refund in the amount of $150,090.39 as shown on the assessment dated August 16, 1982, plus interest from the date of payment, July 2, 1982.

[1] The Act of 1961 was repealed by the Act of December 13, 1982, P.L. 1086. A similar act is now found at 72 Pa. C. S. §§1701-1796.

[2] The petition for refund was amended to incorporate additional reasons in support of the refund. The computation and amount of refund remained the same.

3. However, upon review of Departmental records the Board has determined that the obligation due the Commonwealth pursuant to the Inheritance and Estate Tax Act of 1961 on the transfers from the decedent has been understated on the assessment.

4. The Board has determined the correct amount of inheritance tax due. . . .

5. Inasmuch as Petitioner paid tax in the amount of $252,823.20 on July 2, 1982. . . . , Petitioner is entitled to a refund of overpayment of inheritance tax in the amount of $1,977.91.

The Board ordered a refund of $1,977.91 without interest. Thereafter, on March 7, 1983, the Commonwealth filed an "Inheritance Tax Record Adjustment" based on the Board's decision as follows:

TAX:

15. Amount of line 14 taxable
    at 6% rate          (15)   *151,019.31* x .06 = *9,061.16*
16. Amount of line 14 taxable
    at 15% rate        (16) *1,611,494.27* x .15 = *241,724.14*
17. Principal Tax Due               (17) *250,785.14*

*TAX CREDITS:*

| Payment Date | Receipt # | Discount (+) Interest (-) | Amount Paid |
|---|---|---|---|
| 07-02-82 | 044171 | .00 | 252,823.20 |

|  | |
|---|---|
| *TOTAL TAX CREDIT* | *252,823.20* |
| *BALANCE OF TAX DUE* | *2,038.06CR* |
| *INTEREST* | *.00* |
| *TOTAL DUE* | *2,038.06CR* |

Appellee appealed to the Orphans' Court Division of the Court of Common Pleas of Montgomery County which held in its Adjudication and Decree Nisi (Adjudication) that the August 16, 1982 appraisement was valid

and ·controlling, and that there was no authority for the January 24, 1983 Board decision. That court ordered the Commonwealth to refund Appellee $150,090.39 plus interest. On September 20, 1983, after argument, the exceptions of the Commonwealth to the Adjudication were dismissed, and the Decree Nisi was entered as the final decree of the court.

On appeal to this Court, the Commonwealth argues (1) the executors are not entitled to a credit for an overpayment because there was *in fact* no overpayment and (2) Section 901 of the Act of 1961, *as amended,* 72 P.S. §2485-901, only allows for refunds where the Commonwealth is not equitably or rightfully entitled to the tax.

.The Act of 1961 defines "Lineal descendants" to include:

> children and their descendants, adopted descendants and their descendants, stepchildren, illegitimate descendants of the mother and their descendants, and children and their descendants of the natural parent who are adopted by his spouse. *It does not include descendants of stepchildren,* illegitimate children of the father and their descendants, or adopted children and their descendants in the natural family, except as above set forth.

72 P.S. §2485-102(13) (emphasis added). Under the Act of 1961, therefore, property passing to stepgrandchildren would be taxed at 15%. *See* Sections 403 and 404 of the Act of 1961, 72 P.S. §§2485-403, 2485-404.

·While conceding that the August 16, 1982 appraisement cannot now be modified to reflect the correct *rate* of taxation, the Commonwealth maintains that this consideration is irrelevant: entitlement to a tax refund is dependent upon a finding that "the Common-

wealth is not rightfully or equitably entitled to [the tax]", Section 901 of the Act of 1961, and since the "bequests are taxable at the higher rate, the fact that they were incorrectly reported and appraised at the lower rate presents no rightful or equitable basis for the executor to reclaim the tax." Commonwealth's Brief at 12.

The dispositive issue in the instant case, therefore, is whether the Commonwealth is rightfully or equitably entitled to the tax. It is Appellee's burden to demonstrate that the Commonwealth is not rightfully or equitably entitled to retain the tax collected. *See In re Estate of Baker,* 496 Pa. 577, 437 A.2d 1191 (1981). Appellee asserts that it has satisfied this burden by showing that the original assessment was untimely appealed and therefore the rate of tax fixed in the appraisement is conclusive. We agree.

In *Darsie Estate,* 354 Pa. 540, 47 A.2d 815 (1946), the testator left a life estate with the power to consume the principal to his widow, the remainder to collaterals. The Commonwealth appraised the value of the assets and assessed a direct tax of 2%. When the wife died, the Commonwealth filed a "supplemental" appraisement of "unconsumed" assets to tax the remainder at the 10% rate. Our Supreme Court held that the first appraisement was a final appraisement and assessment:

> The mistake of judgment by the Commonwealth in its [original] appraisement and assessment . . . was the failure to appraise the value of the life estate and to assess a transfer inheritance tax of 2% thereon. . . . [W]hat residue passed to collaterals (assessable at 10%, these items should have been suspended until the life tenant's death. . . . This is not a case of *after-discovered* assets. . . .

354 Pa. at 542; 47 A.2d at 816-17 (emphasis in original; citations omitted). *See also Heberton Estate,* 351 Pa. 564, 41 A.2d 654 (1945) (second appraisement to revise the judgment of appraiser regarded as a nullity and without authority in law).[3]

In *Samuel Estate,* 16 Fiduciary Rep. 593 (O.C. Pa. 2966), the executrix filed her inheritance tax form listing personal property totalling $4,586.94 as taxable and noting assets from a profit sharing trust plan as exempt under a subsection entitled "Information purposes only". The appraiser appraised the taxable estate as the $4,586.94 and did not list as a taxable asset the profit sharing trust plan. The executrix then paid the tax imposed by the appraisement in full. Approximately four months later, the Commonwealth filed a supplemental appraisement which included the profit sharing trust plan as a taxable asset. The executrix appealed, and the Orphans' Court of Montgomery County held that the Commonwealth is barred from making a supplemental appraisement more than 60 days after the original appraisement is made. The court observed:

> It is quite clear to the court that the marginal notation 'Information purposes only' . . . fairly indicates and makes a full disclosure of the profit sharing trust and the specific amount received by the widow thereunder. There was nothing further the taxpayer could have done to make

---

[3] Both *Darsie Estate* and *Heberton Estate* applied the transfer inheritance tax statute that preceded the Act of 1961, which included a provision permitting second appraisements to include assets *omitted* from the first appraisement due to mistakes of judgment of the appraiser. Section 2384 of the Act of June 20, 1919, P.L. 521, *as amended* added by Section 2 of the Act of June 24, 1939, P.L. 721, *formerly* 72 P.S. §2384, repealed by the Act of 1961. Similar provisions are found at Section 702 of the Act of 1961, *as amended,* 72 P.S. §2485-702.

such disclosure, and the taxpayer's duty of disclosure under [72 P.S. §2485-701] has been fully discharged. (Indeed, §701 encourages just such disclosure by stating that it will not constitute an admission of taxability.) With this information before him the tax appraiser had at least six months . . . within which to determine whether this profit sharing trust was or was not taxable. . . . If the Commonwealth decided that the taxpayer erroneously excluded this profit sharing trust as a taxable asset of this estate, it had sixty days . . . to complain about the assessment which they made.

. . . .

This is not a case of 'fraud, accident or mistake' which might permit a 'correction' in the appraisement, but to the contrary there has been a full disclosure by the taxpayer and a formal appraisement *based upon such disclosure* which has become final by reason of lapse of time.

16 Fiduciary Rep. at 594-95 (emphasis in original).

Although we recognize that *Samuel Estate* is not binding upon this Court, *Purdy Estate,* 447 Pa. 439, 291 A.2d 93 (1972), we find its reasoning persuasive and hold that in the instant case, the Commonwealth must be bound by its original appraisement taxing the estate left to the step-grandchildren at 6%. Appellee herein fully disclosed that these beneficiaries were step-grandchildren, and the letter enclosed with the Return informed the Commonwealth[4] that although the tax on

---

[4] In its brief, the Commonwealth alleged that it did not receive the letter Appellee enclosed with the Return because it was given to the Register of Wills and, therefore, could not be held to have been put on notice of the bequests to the step-grandchildren. We note that the Register of Wills acts as the agent for the Com-

the Return showed the amount of tax due at the 6% rate, Appellee was remitting tax at the 15% rate because the inheritance was left to step-grandchildren. This is not a case of mistake, such as mathematical error, *see Omelchenko Estate,* 1 Fiduciary Rep. 2d 273 (O.C. Pa. 1981), which would warrant the Commonwealth's correction of the tax computed and imposed. Neither was there fraud nor accident such as to warrant the Commonwealth's withholding the refund claimed by Appellee.

The Commonwealth emphasizes, however, that because the bequest to the step-grandchildren should have been taxed at the 15% rate, it is the Commonwealth which is rightfully or equitably entitled to the tax. We disagree.

As noted, the original appraisement and assessment is binding on the Commonwealth; the Commonwealth is no longer "rightfully" entitled to receive a tax on the estate at 15%. In balancing the equities of the case, we do not know of what else the Appellee herein could have done to insure that the Commonwealth's appraiser had all of the necessary information before making his appraisement. As the court in *Heberton Estate* noted:

> The testator's will was an involved instrument, disposing of an estate in excess of a million dollars. . . . We must take it for granted that the taxing authorities studied the will and the circumstances existing at the time of the testator's death carefully before they assessed the tax. They must have known that no children were born of the marriage with the wife who survived him and that there was a strong possibility that

monwealth in these matters, so the Commonwealth's argument in this regard must fail. Moreover, even if we were to assume that the Commonwealth's appraiser did not see this letter, the forms filed with the Return explicitly identified the interests of the step-grandchildren.

the fund would ultimately pass to collaterals. They had the right to reserve the question of the rate of tax until the time of the widow's death. Instead of doing this, they chose to accept with finality both the valuation of the estate and the rate of tax. They are now conclusively bound by the assessment and cannot be heard to challenge it. . . . [T]he Commonwealth must be bound by the original assessment.

351 Pa. at 568-69, 41 A.2d at 656-57. Likewise, we must presume that the appraiser's careful review of the will, Return, and all of the pertinent documents enabled him to come to a fully informed decision as to what should be taxed and the rate to be applied.

Sections 901 and 1001 of the Act of 1961 must be read in *para materia:* to allow the Commonwealth to retain the requested refund would amount to taxing the estate at 15%, something which it is precluded from doing by its failure to take a timely appeal from the original assessment. As stated in *Heberton Estate:*

it makes no difference whether the mistake of judgment applies to the taxability of an asset . . . or a mistaken conclusion that the remainder will be subject to the collateral tax instead of the direct. In either case, the assessment is final and conclusive on both the taxpayer and the Commonwealth and cannot be challenged except by an appeal.

351 Pa. at 567, 41 A.2d at 656. We are constrained, therefore, to affirm the order of the Orphans' Court of Montgomery County.

ORDER

The order of the Court of Common Pleas of Montgomery County, Orphans' Court Division, dated September 20, 1983, at No. 83802, dismissing Appel-

lant's exceptions to the adjudication and decree nisi dated July 5, 1983 and entering said decree as a final decree is affirmed.

---

DISSENTING OPINION BY SENIOR JUDGE BARBIERI:

I must respectfully dissent from the majority opinion which would hold that the Appellee-Taxpayer is entitled to a refund of inheritance taxes in the amount of $150,090.39 which the Appellee at oral argument all but conceded was properly due the Commonwealth. The majority erroneously holds that the Commonwealth's failure to file a timely protest of the appraisement of the Appellee's inheritance tax return precludes it from contesting the Appellee's petition for a refund of the difference of the correct amount of inheritance tax due which was paid when the return was filed and the amount of inheritance tax due as shown on the return which was erroneously accepted by the appraiser.

The disposition of petitions for refunds of inheritance taxes is governed by Section 901 of the Inheritance and Estate Tax Act of 1961 (Act), Act of June 15, 1961, P.L. 373, *repealed by the* Act of December 13, 1982, P.L. 1006, *formerly* 72 P.S. §2485-901.[1] Section 901 of the Act reads as follows:

*§2485-901. When refunds will be made*

A refund shall be made of any tax to which the Commonwealth *is not rightfully or equitably entitled,* provided (1) the Commonwealth determines the refund is due, or (2) application for refund is made within the appropriate time limit as set forth in section 904 [former 72 P.S. §2485-904]. (Emphasis added.)

---

[1] This provision is now found at 72 Pa. C. S. §1781.

Under Section 901 of the Act, a petitioner will be entitled to a refund only where the Commonwealth is not *rightfully* or *equitably* entitled to the tax. Here, there is no question that the gifts in question were bequests to step-grandchildren which were taxable under Sections 102(13), 403, and 404 of the Act (repealed), former 72 P.S. §§2485-102(13), 2485-403, and 2485-404, at the Class B rate of fifteen percent. This was the amount of tax *paid* by the Appellee to the Commonwealth although its inheritance tax return erroneously indicated that the tax due was calculated at the Class A rate of six percent. The only support the Appellee had for its claim to the Class A rate of tax was a 1981 decision from a federal district court which found the different treatment in imposing rates of inheritance taxes on bequests to stepchildren and descendents of stepchildren as unconstitutional, *see Estate of Kunkel v. United States*, 518 F.Supp. 690 (M.D. Pa. 1981), which was later reversed by the Court of Appeals. *See Estate of Kunkel v. United States*, 689 F.2d 408 (3d Cir. 1982). Since the burden of proof is upon the party seeking a refund,[2] I would conclude that under the facts in this case that burden cannot be met here except by a ruling that as a matter of law the Commonwealth is not *"rightfully or equitably entitled"* to the tax paid. I find it impossible to so rule, since the law is clear that the Commonwealth was rightfully and equitably entitled to the inheritance tax on

---

[2] While no citation of authority is needed for this proposition, we do note that the Federal Courts have held that the burden is on the taxpayer in refund suits not only to show that the Commissioner of Internal Revenue erred in his determination of tax liability but also to establish the correct amount of refund due. *See United States v. Anderson*, 269 U.S. 422 (1926); *Union Pacific Railroad Co., Inc. v. United States*, 208 Ct. Cl. 1, 524 F.2d 1343 (1975), *cert. denied*, 429 U.S. 827 (1976); *Fireoved v. United States*, 462 F.2d 1281 (3d Cir. 1972).

bequests to step-grandchildren at the Class B rate of fifteen percent. I would hold, therefore, that Appellee failed to satisfy the first requirement of former 72 P.S. §2485-901 in that the Commonwealth is clearly entitled to the inheritance tax *as paid* and that the Appellee is not entitled to a refund.

Furthermore, I believe that the Commonwealth, in any event, should be entitled to assert an equitable set-off against the Appellee's claim for refund. While this precise issue may be one of first instance in Commonwealth cases, such a right is recognized in the Federal Government taxpayer suits for refunds under Section 7422 of the Internal Revenue Code of 1954, 26 U.S.C. §7422. In fact, the Federal Government is entitled to set off against a taxpayer's claim for refund claims for back taxes which the Government would have been otherwise barred from asserting by the expiration of the statute of limitations. *See Missouri Pacific Railroad Co. v. United States,* 168 Ct. Cl. 86, 338 F.2d 668 (1964); *Liberty Life Insurance Co. v. United States,* 439 F.Supp. 927 (D.S.C. 1977). Federal Courts have held that the right of the Government to set off against a taxpayer's claim for refund is based upon the broad equitable principle that the taxpayer is not entitled to any refund unless the taxpayer has in fact overpaid his or her taxes. *See Dysart v. United States,* 169 Ct. Cl. 276, 340 F.2d 624 (1965). Clearly, the principle of equitable set-off should be equally applicable to a refund claim under former 72 P.S. §2485-901 where the Commonwealth has a claim against a taxpayer which the applicable statute of limitations bars the Commonwealth from otherwise asserting.

I would, therefore, reverse the decision of the common pleas court and deny Appellee's claim for refund of inheritance taxes with the exception of the $2,038.06 that the Commonwealth concedes the Appellee overpaid.